# EXHIBIT A

FILED
San Francisco County Superior Court

APR 3 0 2020

CLERK OF THE COURT
BY: _____ Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JOHN ROGERS, AMIR EBADAT, and HANY FARAG,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant. | No. CGC-20-583685<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY AND DENYING APPLICATION FOR EMERGENCY INJUNCTIVE RELIEF** |

## FACTUAL AND PROCEDURAL BACKGROUND

This action was filed on March 12 by three Lyft drivers. The complaint, which was brought as a putative class action on behalf of all drivers who work for Lyft in California, alleges that Lyft misclassifies its drivers as independent contractors, and as a result fails to offer them paid sick leave as required by California law.

On March 19, 2020, Lyft removed the action to the United States District Court for the Northern District of California. By order filed April 7, 2020, Judge Vince Chhabria of that court denied Plaintiffs' motion for an emergency injunction reclassifying Lyft drivers as employees; granted Lyft's motion to strike Plaintiffs' class allegations; granted Lyft's motion to compel the individual claims to arbitration; and remanded a single remaining claim for injunctive relief under the California Unfair Competition Law to this court for resolution. (*Rogers v. Lyft, Inc.* (N.D.Cal. April 7, 2020) --- F.Supp.3d ----, 2020 WL 1684151.)

On remand, Plaintiffs renew their request for emergency injunctive relief. They seek an order enjoining Lyft "from misclassifying its drivers in California as independent contractors and thereby denying these workers their rights under the Labor Code, including state-mandated paid sick leave in violation of Cal. Lab. Code § 246, as well as local ordinances." Lyft moves to compel arbitration of Plaintiffs' remaining claim. For the following reasons, the Court grants Lyft's motion to compel arbitration of Plaintiffs' claim; denies Plaintiffs' renewed application for emergency injunctive relief; and grants Lyft's motion for a stay of proceedings pending the completion of arbitration. (Code Civ. Proc. § 1281.4.)

## DISCUSSION

### A. Motion to Compel Arbitration

Lyft moves to compel arbitration of Plaintiffs' sole remaining cause of action, which alleges that Lyft's misclassification of its drivers including Plaintiffs as independent contractors violates various provisions of the California Labor Code, and therefore constitutes unlawful business acts or practices within the meaning of the Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.* In their prayer, Plaintiffs seek an injunction "requiring Lyft to comply with the

California Labor Code by classifying its drivers as employees and providing them with the protections of the Labor Code, including in particular, reimbursing them for necessary business expenses, ensuring they are receiving at least minimum wage, ensuring they are receiving overtime to which they are entitled, and paying them for sick leave as required by California and municipal law."

It is undisputed that Lyft's Terms of Service contains a detailed Dispute Resolution and Arbitration Agreement, and that none of the three Plaintiffs opted out of that agreement. The agreement provides that it is governed by the Federal Arbitration Act.[1] It notifies each Lyft driver, in capital letters, that he or she is required "to submit claims you have against Lyft to binding and final arbitration on an individual basis, not as a plaintiff or class member in any class, group or representative action or proceeding." (Shah Decl. ¶ 7.) The arbitration agreement extends broadly to all disputes and claims between the parties, including "any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to . . . any city, county, state or federal wage-hour law, . . compensation, breaks and rest periods, expense reimbursement, . . . claims arising under federal or state consumer protection laws, . . . ; and all other federal and state statutory and common law claims." (*Id.*, Ex. A, § 17(a).) It also contains a delegation clause: "All disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator, except as expressly provided below." (*Id.*) Section 17(b) contains a class action waiver, which provides that the parties may bring arbitration claims "only in an individual capacity and not on a class, collective action, or representative basis." That section provides an exception to the delegation provision: "disputes regarding the scope,

---

[1] The district court concluded that Plaintiffs are not transportation workers within the meaning of the FAA exemption contained in 9 U.S.C. § 1. (*Rogers v. Lyft Inc.*, 2020 WL 1684151, at *4-*7; but see *Cunningham v. Lyft, Inc.* (D.Mass. Mar. 27, 2020) 2020 WL 1503220, at *4-*7 [finding that Lyft drivers are within a class of transportation workers excluded from coverage by Section 1 of the FAA].) The Court need not decide that issue, however, because the arbitration agreement is independently enforceable under the California Arbitration Act. (See *Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833, 841 [although FAA did not apply to arbitration agreement because interstate truck drivers are transportation workers whose employment agreements are exempt from the FAA, CAA applied even though agreement did not specifically reference it].)

applicability, enforceability, revocability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator." Further, if "there is a final judicial determination that the Class Action Waiver is unenforceable with respect to any Claim or any particular remedy for a Claim (such as a request for public injunctive relief), then that Claim or particular remedy . . . . shall be severed from any remaining claims and/or remedies and may be brought in a civil court of competent jurisdiction . . . ." Finally, Section 17(h) provides generally that "in the event that any portion of this Arbitration Agreement is deemed illegal or unenforceable under applicable law not preempted by the FAA, such provision shall be severed and the remainder of the Arbitration Agreement shall be given full force and effect."

Lyft moves to compel arbitration of Plaintiffs' UCL claim, on two grounds. First, it asserts that under the delegation clause in Lyft's Terms of Service, the arbitrator rather than the Court must decide whether Plaintiffs' remaining claim is arbitrable. Second, it contends that even if this Court decides the arbitrability question, Plaintiffs' claim seeks private rather than public injunctive relief, and therefore is arbitrable under the arbitration agreement and California law.

The Court rejects Lyft's first argument, that the arbitrator must decide the question whether Plaintiffs' remaining claim is arbitrable. Under both federal and California law, a delegation clause generally is enforceable if it is clear and unmistakable. (See, e.g., *Henry Schein, Inc. v. Archer and White Sales, Inc.* 139 S.Ct. at 530; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 892; *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560.) However, "where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the *court* might also find provisions in the contract unenforceable, there is no clear and unmistakable delegation of authority to the arbitrator." (*Ajamian v. CantorC02e* (2012) 203 Cal.App.4th 771, 792.) That principle governs here, given the express exception to the delegation clause set forth in Section 17(b), and the severance provision in Section 17(h), which also contemplates that a court may find provisions of the arbitration agreement unenforceable.

Lyft's second argument, however, is dispositive: under controlling law, Plaintiffs' remaining UCL claim is arbitrable because it seeks private, not public, relief. Public injunctive

4

relief must "by and large benefit[] the general public and . . . the plaintiff, if at all, only incidentally and/or as a member of the general public." (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 955 (internal citations and quotations omitted).) Private injunctive relief, by contrast, "primarily resolves a private dispute between the parties and rectifies individual wrongs, and . . . benefit[s] the public, if at all, only incidentally." (*Id.*) "Relief that has the primary purpose or effect of redressing or preventing injury to an an individual plaintiff—or a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." (*Id.*) For example, an injunction under the UCL or the false advertising law against deceptive advertising practices is clearly for the benefit of the general public because it is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff. (*Id.*, discussing *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315-316.)[2]

In contrast to the false advertising and deceptive practices claims involved in *McGill*, *Cruz*, and *Broughton*, Plaintiffs' remaining claim under the UCL is one seeking private rather than public injunctive relief because it seeks to resolve a private dispute between the parties regarding Lyft's classification of Plaintiffs and others similarly situated to them. As the district court observed, "the plaintiffs' decision to label their claim as one for a 'public injunction' seems dubious because the proposed remedy runs directly to the plaintiffs and similarly situated drivers, with the public benefiting only collaterally from the provision of paid sick leave." (*Rogers v. Lyft, Inc.*, 2020 WL 1684151, at *10.) Indeed, several federal and state courts in California have held that closely similar claims seeking to enforce Labor Code protections for allegedly misclassified workers seek private rather than public injunctive relief.

---

[2] In *Cruz*, which involved a claim that PacifiCare had made misleading and deceptive statements designed to induce persons to enroll in its health plans, the Court concluded that "the request for injunctive relief is clearly for the benefit of health care consumers and the general public by seeking to enjoin PacifiCare's alleged deceptive advertising practices." (30 Cal.4th at 315.) *Cruz* viewed the claim as "virtually indistinguishable" from the CLRA claim that was at issue in *Broughton v. Cigna Healthplans of California* (1999) 21 Cal.4th 1066. (*Id.*) *McGill* similarly involved a claim that Citibank had engaged in false advertising and deceptive marketing of a "credit protector" plan by which it agreed to defer or credit certain amounts on customers' credit card accounts when a qualifying event occurred. (2 Cal.5th at 952, 956-957.)

1  Thus, in *Clifford v. Quest Software Inc.* (2019) 38 Cal.App.5th 745, an employee brought various wage and hour claims against his employer, and the employer moved to compel arbitration based on the parties' arbitration agreement. The trial court granted the motion in part and ordered to arbitration every cause of action except the employee's claim under the UCL, which the court concluded was not arbitrable. The Court of Appeal reversed, holding squarely that because the employee's claim sought only private injunctive relief and restitution, it was arbitrable and did not seek public injunctive relief. (*Id.* at 753.) The court pointed out that the complaint "repeatedly refers to wage and hour violations directed at [plaintiff] only," and did not allege the employer directed similar conduct at other employees, much less the public at large; and that plaintiff's requests for injunctive relief under the UCL were "similarly limited to him as an individual," and "the only potential beneficiaries are Quest's current employees, not the public at large." (*Id.*)

Similarly, the United States District Court for the Northern District of California has twice rejected closely similar arguments. In *Magana v. DoorDash, Inc.* (N.D. Cal. 2018) 343 F.Supp.2d 891, exactly as here, plaintiff filed a putative class action against DoorDash, contending that it had misclassified him and other delivery drivers as independent contractors rather than employees. The complaint asserted claims for violation of the Labor Code and for unlawful business practices under the UCL. The district court granted DoorDash's motion to compel arbitration, rejecting plaintiff's argument that the arbitration agreement was invalid because it purported to prevent all adjudication of public injunctive relief in any forum in violation of *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945. The court squarely held that plaintiff's claims for violations of the California Labor Code did not assert a claim for public injunctive relief:

> Here, plaintiff's operative complaint and proposed amended complaint both seek injunctive relief only for his California Labor Code claims. [Citations.] Those claims have the primary purpose and effect of redressing and preventing harm to DoorDash's employees. Indeed, plaintiff's argument makes clear that the injunctive relief he seeks would be entirely opposite of what *McGill* requires—any benefit to the public would be derivative of and ancilliary to the benefit to DoorDash's employees (in the form of, for example, the

> company's increased tax benefits and employees' possible decreased dependence on assistance from the state government). Therefore, Magana does not assert a claim for public injunctive relief under state law.

(343 F.Supp.2d at 901; accord, *Colopy v. Uber Technologies Inc.* (N.D. Cal. 2019) 2019 WL 6841218, at *3 [denying motion for preliminary injunction in putative class action alleging that Uber misclassifies its drivers as independent contractors, holding that plaintiff "is seeking a private, not public, injunction"].)

Plaintiffs argue that the relief they seek is public rather than private in nature because it will shield the public from the health risks posed by Lyft drivers who would otherwise expose customers to the COVID-19 virus. However, *Clifford* squarely rejected the argument that such an incidental effect on the public interest, no matter how significant, can transform a fundamentally private dispute into a public one:

> We are not persuaded. The public certainly has an interest in securing an employer's compliance with wage and hour laws. [Citations.] But that public interest and any incidental benefit to the public from ensuring Quest's compliance with wage and hour laws do not transform Clifford's private UCL injunctive relief claim into a public one under the definitions of public and private injunctive relief articulated by our Supreme Court in *Broughton*, *Cruz*, and *McGill*. Under those definitions, *an employee's request for an injunction requiring his employer to comply with the Labor Code is indisputably private in nature.*

(*Id.* at 755 (emphasis added); accord, *Magana*, 343 F.Supp.3d at 901 [where "any benefit to the public would be derivative of and ancilliary to the benefit to DoorDash's employees," plaintiff did not assert a claim for public injunctive relief under state law].)

This authority is controlling.[3] Here, just as in *Clifford*, the complaint alleges acts of unlawful business practices against Plaintiffs and other Lyft drivers only, not against the general public. The request for injunctive relief directing Lyft to reclassify its drivers is likewise directed

---

[3] Plaintiffs contend that *Clifford* is not binding on this Court because it was "wrongly decided" and because it was decided by the Fourth Appellate District. Plaintiffs are wrong. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Decisions of every division of the District Courts of Appeal are binding upon all the . . . superior courts of this state."]; *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193 ["All trial courts are bound by all published decisions of the Court of Appeal"].)

7

to Plaintiffs and other Lyft drivers as individuals, not to the general public. While the incidental public interest in relief here arguably is greater than in other misclassification cases, the difference is one of degree rather than of kind. As the district court observed, Plaintiffs "appear to conflate the magnitude of the public interest in a private injunction with the manner in which a public injunction benefits the general public in equal shares (for example, by enjoining false advertising or deceptive labeling that could trick any member of the public)." (*Rogers v. Lyft, Inc.*, 2020 WL 1684151, at *10.) Plaintiffs' UCL claim seeks to resolve a private dispute between them and Lyft, and therefore seeks private, not public, injunctive relief. As such, it falls squarely within the scope of the arbitration agreement, and Lyft's motion to compel arbitration of the remaining claim must be granted.

### B. Application for Emergency Injunctive Relief

That Plaintiffs' remaining claim is subject to mandatory arbitration is not dispositive of their application for emergency injunctive relief. Like federal law, California law authorizes a court to issue provisional remedies in connection with an arbitrable controversy. (Code Civ. Proc. § 1281.8.)

Plaintiff are seeking preliminary injunctive relief, which is an "extraordinary remedy." (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) The question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief. (*White v. Davis* (2003) 30 Cal.4th 528, 554.) Both factors must be satisfied. (See *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 289 ["Even if the trial court had found for appellants on the 'likelihood of success on the merits' factor, it nevertheless could have refused to issue a preliminary injunction if it found that the interim harm to appellants did not outweigh the interim harm to respondents."]; *Leach v. City of San Marcos* (1989) 213 Cal.App.3d 648, 651, 657-663 [same].)[4] The burden is on the party

---

[4] The Court assumes for purposes of this discussion that Plaintiffs have shown a likelihood of prevailing on the merits of their claim that Lyft has misclassified them as independent contractors, in violation of A.B. 5 (Stats. 2019, ch. 296) and the test established in *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903. (See *Rogers v. Lyft, Inc.*,
(continued...)

seeking the preliminary injunction to show all of the elements necessary to support issuance of the stay." (*Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 854.)

The Court agrees with the district court's comprehensive and well-reasoned analysis, which concluded that the relief sought by Plaintiffs is not necessary to forestall irreparable harm, and could actually harm Lyft drivers by jeopardizing their entitlement to substantially greater relief afforded them under emergency federal legislation enacted to address the coronavirus pandemic. The district court offered three reasons for that conclusion:

> First, even if drivers were reclassified, the amount of sick pay involved would be small. *See* Cal. Labor Code § 246. Although a handful of drivers might qualify for three days' worth of sick pay per year (the amount at which employers can cap usage under California law), most Lyft drivers would not qualify for anything close to that. The record suggests that roughly 41 percent of the drivers haven't accrued enough hours of work to qualify for sick pay at all. And even for those who do qualify, a significant percentage would get four hours (that is, a half day) or less.
>
> Second, if the Court ordered Lyft to reclassify its drivers immediately, it's possible that the drivers would lose the opportunity to obtain emergency assistance totaling thousands of dollars from the federal government. Take, for example, sick leave. The Families First Coronavirus Response Act offers substantial sick pay to independent contractors sidelined by coronavirus. Pub. L. No. 116-127, § 7002, 134 Stat. 178, 212 (2020). The Act makes independent contractors eligible for up to ten days of paid sick leave in the form of refundable tax credits worth up to the lesser of $511 per day or their average daily income last year. § 7002(c)(1)(B), 134 Stat. at 212. But if Lyft drivers were employees, they might not qualify for these benefits. The Act funds sick pay for employees too, but it excludes people who work for companies with 500 or more employees. §§ 5102, 5110(2)(B)(i)(I)(aa), 134 Stat. at 195–96, 199. Lyft has well more than 500 drivers in California, so Lyft drivers (once classified as employees) might not be entitled to any type of sick pay under the new federal legislation. In addition, independent contractors can apply for a forgivable small business loan through the Paycheck Protection Program to cover up to 250 percent of their monthly income as a measure of "payroll costs." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 1102(a)(2), 134 Stat. 281, 286–93 (2020). If Lyft drivers are immediately switched from independent contractor to employee status, they could lose their entitlement to this relief as well. Nor have the plaintiffs identified any additional benefits that employees of large employers receive under the emergency federal legislation that would offset these potential losses.
>
> Third, even if the drivers wouldn't lose federal relief upon reclassification, it is indisputable that the small amounts of paid sick leave that would be available to some Lyft drivers under California Labor Code § 246 pale in comparison to the assistance workers will be able to

---

(…continued)
2020 WL 1684151, at *2.)

> get from the emergency legislation. *See, e.g.*, CARES Act § 2102(a)(3), (c), 134 Stat. at 313–15 (authorizing up to 39 weeks of unemployment assistance to independent contractors who cannot work or lost their job due to coronavirus but would not otherwise qualify for unemployment benefits); § 2104(b)(1)(B), (e)(2), 134 Stat. at 318–19 (augmenting unemployment benefits with $600 weekly payment through end of July); § 2201(a), 134 Stat. at 335 (establishing recovery rebate that, for example, pays out $1,200 to individual filers with adjusted gross income under $75,000).

(*Rogers v. Lyft*, 2020 WL 1684151, at *1-*2.)

Plaintiffs take issue with various details of the district court's analysis. However, none of their arguments affects the essential point: the extraordinary relief Plaintiffs seek would provide at most modest benefits to a small subset of Lyft drivers, while potentially risking the eligibility of *all* Lyft drivers to receive substantially greater relief under the emergency federal legislation.[5]

The Court is unpersuaded by Plaintiffs' assertion that Lyft drivers might be deemed to be independent contractors for purposes of federal law, and thus eligible for federal emergency relief, even if the Court were to grant their request to order Lyft to reclassify them as employees under state law. Such risky speculation cannot justify the issuance of sweeping mandatory injunctive relief that could affect the rights of many tens of thousands of Lyft drivers who are not before the Court. (See *East Bay Municipal Utility Dist. v. Dept. of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1113, 1126 ["An injunction properly issues only where the right to be protected is clear, injury is impending and so immediately as only to be avoided by issuance of the injunction."].)

---

[5] Although this matter has been pending for over one month, the factual record regarding the number and status of affected drivers is exceedingly sparse. Lyft's showing establishes that around 305,000 drivers completed rides on its platform in the 12 months up to October 1, 2019. (Sholley Decl. ¶ 11.) Its analysis of a sample of 10,000 drivers shows that most drivers who use Lyft in California drive only occasionally, often as little as a few hours per week. (*Id.* ¶¶ 9-14.) As a result, many (perhaps a majority) would not qualify at all to receive paid sick leave under California law even if Lyft were ordered to reclassify them as employees, and many others would be entitled to only a fraction of the 24 hours (3 full days) of sick leave provided by state law. (*Id.* ¶¶ 15-18.) While Plaintiffs acknowledge there are "hundreds of thousands" of Lyft drivers in California, their application is supported by the declarations of only four drivers. Of those declarants, two assert they suffer from coughs and other symptoms of the novel coronavirus, although neither has been diagnosed with the disease, and one asserts that he is continuing to drive while sick. (Ebadat Decl. ¶¶ 5, 8; Odunuga Decl. ¶¶ 6-9.) The record contains no information regarding how many drivers have been diagnosed with the virus, quarantined or hospitalized; what number or percentage of drivers have health insurance; or what measures Lyft has taken to safeguard the health of its drivers and the public.

Plaintiffs also contend that while the federal legislation concededly promises to provide substantial relief, including unemployment benefits, some of that relief has been delayed and may be difficult to access. While that is entirely plausible, given the depth of the crisis and the unprecedented challenges it presents, delays in implementation of federal legislation cannot, by themselves, justify a state court in granting injunctive relief and thereby displacing Congress's and the California Legislature's proper roles. In an amicus brief, former California Governors Gray Davis and Arnold Schwarzenegger urge that granting the requested relief not only would jeopardize the eligibility of independent contractors and others for emergency relief under the federal legislation, but would undermine or interfere with legislative efforts to extend relief in the crisis caused by the coronavirus pandemic.[6] In the Court's view, that concern is well-grounded.

Finally, the conclusion that Plaintifs have failed to establish that the extraordinary relief they seek is warranted is supported by at least two additional factors. *First*, Plaintiffs' application does not seek "preliminary injunctive relief to preserve the status quo pending a final judgment," which is the usual function of such relief. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 922.) Rather, it seeks a mandatory injunction that would drastically *change* the status quo by compelling Lyft to reclassify all of its hundreds of thousands of California drivers as employees. (See *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 438, 446 ["an injunction is prohibitory if it requires a person to refrain from a particular act and mandatory if it compels performance of an affirmative act that changes the position of the parties."].) Such a preliminary mandatory injunction is "rarely granted." (*People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614, 630.) "The granting of a mandatory injunction pending trial 'is not permitted except in extreme cases where the right thereto is clearly established.'" (*Id.*; see also *Brown v. Pacifica Foundation, Inc.* (2019) 34 Cal.App.5th 915, 925; *Teachers Ins. & Annuity Ass'n v. Furloff* (1999) 70 Cal.App.4th 1487, 1493.)[7]

---

[6] The Court grants the former Governors' motion for leave to file that short brief, to which Plaintiffs were given the opportunity to respond.

[7] Regardless of its wording, such a mandatory injunction is automatically stayed by the filing of an appeal. (Code Civ. Proc. § 916; *Davenport v. Blue Cross of California*, 52 Cal.App.4th at 446-448 [preliminary injunction which required Blue Cros to authorize and pay
(continued...)

*Second*, courts' reluctance to grant injunctive relief that would drastically change rather than preserve the status quo is particularly pronounced where, as here, issuance of such relief would interfere with the arbitration. California law authorizes the issuance of provisional relief in an arbitrable case, "but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (Code Civ. Proc. § 1281.8.) This requirement ensures that a judge does not invade the province of the arbitrator. (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 894; *California Retail Portfolio Fund GMBH & Co. KG v. Hopkins* (2011) 193 Cal.App.4th 849, 855-856.) Thus, a court may grant provisional relief "if the party seeking the relief establishes the necessity of the injunction to preserve the status quo pending arbitration in order to avoid nullification of the arbitration process. Where such a showing is made, the court may step in and freeze the situation so the arbitration can have effect." (*Davenport v. Blue Cross of California*, 52 Cal.App.4th at 452.) However, a court is not justified in granting mandatory injunctive relief that would *change* the status quo unless the moving party shows she is unable to obtain a timely resolution through arbitration. (*Id.* at 453-454 [reversing preliminary injunction enjoining Blue Cross from refusing coverage for medical treatment for ovarian cancer pending arbitration where plaintiff failed to show injunction was necessary to preserve effectiveness of arbitration].)[8]

---

(…continued)
for plaintiff's medical treatment was mandatory]; *Agricultural Labor Relations Bd. v. Superior Court* (1983) 149 Cal.App.3d 709, 713 [injunction restraining employer from "refusing to reinstate" certain workers was actually mandatory injunction compelling employer to rehire workers, thus automatically stayed on appeal].)

[8] As its counsel admitted at the hearing, Lyft's arbitration agreement would preclude an arbitrator from granting anything but individualized relief. As a practical matter, then, the consequence of the district court's and this Court's orders compelling arbitration of Plaintiffs' claims is that no one—neither this Court nor the arbitrator(s)—will be empowered to grant the relief Plaintiffs seek requiring Lyft to reclassify all of its drivers. That is a troubling consequence of Lyft's litigation strategy and of controlling authority governing arbitration agreements. The Court notes, however, that A.B. 5 expressly authorizes the Attorney General or other public authorities to bring an action for injunctive relief to prevent the continued misclassification of employees as independent contractors. (Lab. Code § 2750.3.)

### C. Stay of Proceedings

Once arbitration has been compelled, in whole or in part, a stay of proceedings is mandatory if the issues in the arbitration and the pending action overlap. (Code Civ. Proc. § 1281.4 [if a court "has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."].) "The purpose of the statutory stay [under section 1281.4] is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved. [Citations.] [¶] In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective." (*Federal Ins. Co. v. Superior Court* (1998) 60 Cal.App.4th 1370, 1374-1375.) Even "a single overlapping issue is sufficient to require imposition of a stay." (*Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1153.)

Here, just as in *Coast Plaza Doctors Hosp. v. Blue Cross* (2000) 83 Cal.App.4th 677, the arbitration "may render entirely moot the issue of [Plaintiffs'] entitlement to injunctive relief. [Citations.] Without a stay, there is a threat of inconsistent judgments—risk of a judgment on [Plaintiffs'] substantive claims decided in a private arbitration that is incompatible and inconsistent with the determination by the Court of [Plaintiffs'] entitlement to injnctive relief for those same substantive claims." (*Id.* at 690-693 [severing and staying request for injunctive relief pending completion of arbitration]; see also *Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947, 966 ["Because the issues subject to litigation under the PAGA might overlap those that are subject to arbitration of Franco's individual claims, the trial court must order an appropriate stay of trial court proceedings"].)

Here, Plaintiffs' application indisputably overlaps with the claims committed to the arbitrators for resolution, both by the district court's order and by this Court's order. Both sets of claim turn in the first instance on the very issue Plaintiffs ask the Court to address: whether Lyft has misclassified its drivers as independent contractors rather than employees. California law

therefore dictates that the Court stay this action pending the completion of the arbitration proceedings.

## CONCLUSION

The Court does not doubt that many Lyft drivers are in dire financial straits as a result of the current coronavirus pandemic, which has had catastrophic effects on the health, safety, and economic security of so many around the globe. Countless workers across every sector of our economy, regardless of whether they are classified as full- or part-time employees, independent contractors, or have become unemployed, find themselves in the same unfortunate situation. Likewise, while the factual record before the Court is sparse, it is entirely conceivable that some Lyft drivers have been infected with the COVID-19 virus, and that a few may even have decided to continue to work while sick. But a court's powers extend only so far. The extraordinary mandatory injunctive relief Plaintiffs seek here is not warranted either by the record or by California law. Accordingly, Lyft's motion to compel arbitration is granted, Plaintiffs' application for emergency injunctive relief is denied, and this action is stayed pending the completion of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: April 30, 2020

_____
HON. ETHAN P. SCHULMAN
JUDGE OF THE SUPERIOR COURT

## CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.260(g))

I, Melinka Jones, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On April 30, 2020, I electronically served the attached ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY AND DENYING APPLICATION FOR EMERGENCY INJUNCTIVE RELIEF via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: April 30, 2020

T. Michael Yuen, Clerk

By: _____
Melinka Jones, Deputy Clerk